34866. BOLDEN *v.* THE STATE.

872

DECIDED OCTOBER 15, 1953.

*Benjamin Smith, Benjamin Smith, Jr.,* for plaintiff in error.

*Joe Schreiber, Solicitor,* contra.

TOWNSEND, J. ■ It was the defendant's contention that, while he owned the premises on which the raid was made, he had leased it to the sister of Blanche Holmes, who was present at the time of the raid and who testified that she was operating the establishment for her sister and not for the defendant. Testimony for the State, however, showed that Blanche Holmes, when arrested, had on her person a considerable amount of money, which she said represented receipts of the business and which she wanted to turn over to the defendant personally, since it was his; that the defendant had taken out a cafe license and malt-beverage license on the establishment in his own name; that he had approached the sheriff several times since the raid to get the place reopened, and had also asked another witness to intercede with the sheriff to have it opened; that he was present

for at least 15 minutes to a half hour shortly before the raid, and had been in the main room and behind the counter at that time, although he left before the officers arrived (the witness who saw him on that occasion further testifying that he only worked on Saturday nights, but had not seen him before that for about a year); that the raid occurred at about 2 a.m. on a Sunday morning, at which time over 90 people were in the main room, dancing, shouting, and talking loudly; that many of them were drunk; that there were empty beer and liquor bottles about the place, as well as cards and poker chips on tables; that there were some little outbuildings 35 or 40 feet back of the main building, in which the officers found three couples "bedded up," and that they arrested a number of people, and still others escaped.

In considering whether this evidence was sufficient to connect the defendant with the operation of the establishment, the testimony of Blanche Holmes was not objected to as hearsay. It nevertheless had no probative value as such, but the circumstances were sufficient to show that she, together with the defendant and others, were coconspirators in the operation of the premises, and her declaration that she was operating the enterprise for the defendant and the money thus obtained belonged to him was admissible, since it was made during the pendency of the conspiracy. *Loomis* v. *State,* 78 *Ga. App.* 336 (2) (51 S. E. 2d 33). As stated in *Smith* v. *Nix,* 206 *Ga.* 403 (57 S. E. 2d 275): "Under the 'Revenue Tax Act to Legalize and Control Alcoholic Beverages and Liquors' (Code, Ann. Supp., § 58-1001 et seq.) one cannot lawfully engage in the sale of alcoholic beverages and liquors by proxy, and without obtaining a license or permit as required by the statute." These offenses are misdemeanors, and all who may be concerned in their commission are principals. *Kinnebrew* v. *State,* 80 *Ga.* 232 (5 S. E. 56); *Carter* v. *State,* 143 *Ga.* 632 (85 S. E. 884). Ordinarily, where one claims that he rented the premises to another, but did not know that such other intended to put it to illegal use, and did not himself participate therein, or aid and abet in the perpetration of the offense, it is entirely a jury question as to whether the defendant was in fact engaged, through others, in its commission. *Moody* v. *State,* 14 *Ga. App.* 523 (4) (81 S. E. 588). There:

is sufficient evidence here to have authorized the jury to find that the relationship between the defendant and Blanche Holmes or her sister was not a bona fide lease arrangement, but that the defendant was actively participating in the operation of the establishment; and from the further witness that the defendant was actually present in the establishment on the Sunday morning of the raid and went behind the counter, where there was a stock of liquor, some of which was sold shortly thereafter. They were further authorized to find that he had actual knowledge (a) that liquor was being sold without a retail license; (b) that liquor was being drunk on the premises; (c) that the drinking, shouting, dancing, card-playing, and general demeanor of the place constituted a disorderly house; (d) that dancing was being permitted on Sunday; and (e) that liquor was being sold on Sunday. Accordingly, the verdict was authorized as to count 1 of accusation No. 17344, count 1 of No. 17345, accusation No. 17346, and count 1 of No. 17347.

■ The old statute embodied in Code § 26-6105, while archaic in language, is still in force in this State, and forbids the keeping open of tippling houses on the Sabbath. A tippling house is one where intoxicating beverages, including beer and liquor, are served in small quantities to be drunk on the premises. *Hussy* v. *State*, 69 *Ga*. 54; *Mayor &c. of Leesburg* v. *Putnam*, 103 *Ga*. 110 (29 S. E. 602). The gravamen of the offense is the *keeping open* of the house and so placing temptation in the way of customers on the Sabbath day. *Hall* v. *State*, 3 *Ga*. 18. Any club, restaurant, or other place of business is classified as a tippling house under this section when drinks are sold and consumed there, regardless of whether such sale is only incidental to and not the main object of the establishment. *Mohrman* v. *State*, 105 *Ga*. 709 (1) (32 S. E. 143). Under these cases, the evidence was also sufficient to authorize the jury to convict of this offense, for which reason there was no error in overruling the motion for new trial as to count 2 of accusation No. 17347.

■ Count 2 of accusation No. 17345 charges the defendant with keeping a lewd house. The only evidence that was relevant in this regard was that there were some little outbuildings in the back, and that these were occupied by three couples. It does not appear whether they were furnished as bedrooms or

used generally for this purpose, nor is there any evidence as to the reputation of the establishment as being run for immoral purposes or whether the couples so found were occupying these places by consent of any person connected with the place or not. "In order to convict an innkeeper of maintaining a lewd house, on the theory that, along with other guests, he allows lewd women to stop at his inn and ply their vocation, it is necessary to show that the innkeeper had knowledge, actual or implied, of the unlawful practices that were going on. Such knowledge may be shown directly or circumstantially, and, where the accused himself was in personal charge of the inn, one of the methods by which he may be charged with the knowledge is to show that his house had acquired a general reputation in the community of being a place in which fornication and adultery were commonly practiced; the sufficiency of such testimony being for the jury." *Fitzgerald* v. *State*, 10 *Ga. App.* 70 (72 S. E. 541), quoted in *Smith* v. *State*, 52 *Ga. App.* 88, 90 (182 S. E. 816). The evidence here does not meet this test of sufficiency. The defendant was not letting rooms; there is no evidence either that he had knowledge of the premises being put to this use, or that anyone connected with its operation had such knowledge, nor were there any facts from which he should have been put on notice that they were being so used, so far as appears from the record. Accordingly, the verdict on this count was totally without evidence to support it.

■ Count 2 of accusation No. 17344 charges a violation of Code (Ann. Supp.) § 58-1027, making it unlawful for any retailer of liquor, as defined in that chapter, to permit the breaking of packaged liquor or the drinking of the contents thereof on the premises where sold. It appears that the defendant was not a retailer of liquor within the contemplation of the Revenue Tax Act to Legalize and Control Alcoholic Beverages and Liquors (Ga. L. 1937, p. 103; Code, Ann. Supp., Chapter 58-10), in that he had no license as provided in Code (Ann. Supp.) § 58-1026, for which reason there is no evidence to support this count of the accusation, and in consequence, the verdict of guilty was unauthorized as to this count.

*Judgment reversed as to count 2 of accusation No. 17344 and count 2 of accusation No. 17345. Judgment affirmed as to count*

*1 of accusations Nos. 17344, 17345, 17346, and both counts, accusation No. 17347.*

*Gardner, P.J., and Carlisle, J., concur.*